IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHANNON EMOND,

    Plaintiff

v.     CIVIL NO. JKB-10-1680

CORRECTIONAL MEDICAL SERVICES, INC.,

    Defendant

* * * * * * * * * * * *

## MEMORANDUM

Shannon Emond ("Plaintiff") brought this suit against her former employer, Correctional Medical Services ("Defendant"), alleging retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Defendant now moves for summary judgment. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 23) is DENIED.

### I. BACKGROUND

Defendant is a medical services provider to state and local correctional facilities. In July of 2005, Plaintiff began work for Defendant as a records clerk at Eastern Correctional Institution ("ECI") in Westover, Maryland. Plaintiff was subsequently promoted to the position of Administrative Assistant to the Regional Manager. The following December, Defendant hired Elaine Mysliwiec as Regional Manager, making her Plaintiff's direct supervisor. Plaintiff alleges that, almost immediately, Ms. Mysliwiec began to treat her in ways that she deemed "inappropriate." (Pl.'s Resp. Opp. Summ. J. 2, ECF No. 26-1). Namely, Plaintiff alleges that Mysliwiec frequently commented on her physical appearance and expressed preferences as to the

1

way she dressed (such as preferring that she wear skirts) or styled her hair. *Id*. She further alleges that Mysliwiec's conduct became worse over time, stating that Mysliwiec stared at her "incessantly," complimented her appearance "at least daily," routinely asked questions about her personal life such as "does your fiancé love you?" or "are you happy with your relationship?," and that she "developed a routine of entering [her] office unannounced and staring at [her] from behind until [she] discovered she was being watched." *Id*. Plaintiff further alleges that Mysliwiec "frequently engaged in public displays of affection with other staff members" in her presence, which she believed to evince the "type of personal relationship she expected." *Id* at 3.

Plaintiff alleges that she confronted Mysliwiec on several occasions to inform her that her conduct was "disturbing" and asked her to stop, but that Mysliwiec persisted. *Id* at 2. Then, according to Plaintiff, Mysliwiec's conduct "intensified" in January of 2006. Plaintiff alleges that the following incident occurred on January 27, 2006:

> While Ms. Emond sat at her computer with her back to the door, Ms. Mysliwiec "snuck into" her office, reached over Ms. Emond's body, and grabbed Ms. Emond's hand. Ms. Emond, who thought she was alone in her office, was startled and immediately pushed back in her chair. Ms. Emond protested Ms. Mysliwiec's handholding, told Ms. Mysliwiec that she believed her touching to be inappropriate and demanded Ms. Mysliwiec stay out of her "personal space."

(Pl.'s Resp. 3). Plaintiff claims that she reasonably construed Mysliwiec's conduct as "sexual advances."

A few days after the alleged incident in Plaintiff's office, Mysliwiec issued Plaintiff two disciplinary counseling notices. The first, entitled "verbal warning," claimed that Plaintiff had failed to follow proper procedures for taking sick leave several weeks prior. The second, entitled "final written warning," stated that Plaintiff had refused to accept additional job responsibilities with regard to payroll. Plaintiff disputed both accusations and refused to sign the warnings.

2

The following day, Plaintiff sent letters to Mysliwiec, Senior Regional Manager Jan Epp, and Human Resources Manager Sterling Price, alleging that Mysliwiec was sexually harassing her, and had issued the recent disciplinary notices in retaliation for Plaintiff's "rebuffing [her] sexual advances." (Pl.'s 2/2/06 Letter, ECF No. 26-5, Ex. D). The letters contained the statements: "I feel that I am being sexually harassed and personally harassed by [Ms. Mysliwiec]," and "[Ms. Mysliwiec's behavior towards me has made me uncomfortable and has created a hostile workplace, in violation of federal law." *Id*. Plaintiff alleges that, when she arrived at work the day after she sent the letters, "Ms. Mysliwiec threw a stack of papers directly at [her] and then stormed out of the room." (Pl.'s Resp. 4). Two days later, on January 5th, Plaintiff reported the incident, which she calls an "assault," to Defendant's Human Resources and Management Departments, including Ms. Epp and Mr. Price. (Pl.'s 2/5/06 Letter, ECF No. 26-6, Ex. E).

Plaintiff alleges that Defendant ignored her complaints. According to her, Ms. Epp made a routine visit to ECI on February 6, 2006, during which she discussed Plaintiff's accusations with Mysliwiec, but "declined to address the issue directly with [Plaintiff]." (Pl.'s Resp. 5). She claims that Ms. Epp told Mysliwiec that she would have to get along with Plaintiff or "one would have to go." *Id*.

The following day, Plaintiff allegedly approached another ECI employee, Captain Rhodes, and requested that her office be relocated to a space further away from Mysliwiec. Rhodes allegedly refused. Plaintiff claims that she then decided to leave work for the day because of her frustration with "her inability to escape Mysliwiec, as well as MCS' failure to address her complaint." *Id*. She claims that she said to her coworker, Jennifer Daly, that she had "had enough for the day" and "was done for the day," to which Daly replied "Okay. I'll see you tomorrow." *Id*.

Plaintiff claims that she called in sick to work the following morning due to stomach problems and a migraine. Several hours later, she claims she received a phone call from Mysliwiec,

3

Daly, and Sample, who informed her that she "was no longer welcome back to the facility and that [Ms. Myslwiec] had put a memo out front denying Ms. Emond entry into the facility." *Id*. Daly allegedly explained that Defendant construed Plaintiff's statement that she had "had enough" as a resignation. Plaintiff denied that she had resigned and asked, rhetorically, "Why would I call out sick if I had quit? Why would I have [paid time off] on the books for the next two days if I had quit? Why would I have told everyone I will see you Monday if I had quit?" *Id* at 6.

Plaintiff alleges that she then wrote to Epp to inform her that she had not resigned and that she believed Mysliwiec was attempting to "get rid of [her] in direct – and illegal – retaliation for [her] reporting of her sexual harassment." (Pl.'s Letter to J. Epp, ECF No. 26-9, Ex. H). When Plaintiff did not receive a response from Epp, she wrote to Defendant's Senior Vice President of Human Resources, Sally Powers, stating that she had "been sexually harassed and assaulted by [her] immediate supervisor, and when [she] reported these incidents, [she] was fired in retaliation." (Pl.'s Letter to S. Powers, ECF No. 26-3, Ex. B). She also alleged that her attempts to deal with the situation at lower levels of management had been ignored.

When Plaintiff received no response from Powers, she filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On September 30, 2009, the EEOC issued a Determination, finding that Defendant "violated Title VII by subjecting [Ms. Emond] to retaliatory discharge for engaging in a protected activity," (ECF No. 26-11, Ex. J) and subsequently issued Plaintiff a right-to-sue letter (ECF No. 26-12, Ex. K). Plaintiff filed this suit for retaliation on June 23, 2010. (Compl. ECF No. 1).

Defendant offers a different account of these events. According to it, Plaintiff began to exhibit performance and conduct problems in early 2006. On January 19, 2006, Defendant alleges that Mysliwiec had a meeting in her office with Plaintiff, during which she told Plaintiff that one of her job duties was to process the payroll. Plaintiff allegedly refused to take on the duties of payroll,

4

which, although part of her job description, had been assigned by previous supervisors to another employee. Plaintiff allegedly walked out of the meeting before Mysliwiec was finished speaking, and refused to return when Mysliwiec requested her to. Defendant alleges that Plaintiff and Mysliwiec met again on February 1, 2006, and that Mysliwiec gave Plaintiff verbal counseling and issued a written warning with regard to her alleged "excessive absenteeism." (Def.'s Mem. Summ. J. 3, ECF No. 23-1). Plaintiff became angry and refused to sign the warning.

Defendant alleges that, following these meetings, Mysliwiec told Epp that, despite the meetings, she did not think Plaintiff would perform her job responsibilities. At Epp's instruction, Mysliwiec prepared a memorandum to Plaintiff reiterating her responsibility for the payroll. According to Defendant, Mysliwiec received a letter from Plaintiff the following day, objecting to the disciplinary notices and alleging, for the first time, that Mysliwiec had issued the notices in retaliation for Plaintiff's "spurning what she referred to as Mysliwiec's sexual advances." *Id* at 5.

Defendant alleges that on February 6, 2006, Epp made a routine visit to ECI. Epp had occasion to speak briefly with Plaintiff, who asked to have her office moved because it was "in a busy area," but said nothing regarding sexual harassment. *Id* at 6. Defendant claims Plaintiff did not mention the alleged sexual harassment. Epp later met with Mysliwiec, however, who showed her Plaintiff's letter. Epp asked Mysliwiec if the allegations of sexual harassment were true, and Mysliwiec denied them. Defendant claims that Epp planned to meet with Plaintiff to discuss the allegations, but that the work day was over by the time she finished talking with Mysliwiec, and that, by the following day, Plaintiff had quit.

Defendant claims that on the following day, February 7, 2006, Mysliwiec received a memorandum from another employee at ECI, Captain B. Brimer, complaining about what he believed to be Plaintiff's unprofessional conduct the previous day. According to him, ECI custody staff overheard Plaintiff say she was being "treated like a dickhead." *Id* at 7. He requested

5

Mysliwiec speak to Plaintiff regarding "professionalism and her attitude in this institution." *Id*. Plaintiff, however, allegedly received the memorandum before Mysliwiec and read it. Plaintiff then wrote up her own account of the incident, claiming that she had said only that "I never get what I want." *Id*.

Defendant alleges that Plaintiff then went to her office and began to pack up her belongings. Allegedly, Plaintiff asked a fellow employee, Melissa Hixon, to come into her office. When Hixon arrived, Plaintiff allegedly asked her to help carry her belongings to her car and said "That's it, I'm leaving. I'm never coming back, I quit," and "I'm gone, they've won." *Id*. Defendant also alleges that Plaintiff told a coworker, Jennifer Daly, that "if Mysliwiec wanted anything from Plaintiff, Mysliwiec could retrieve it from Plaintiff's lawyer." *Id* at 7-8.

Finally, Defendant alleges that Sally Powers received a letter from Plaintiff about two months later, accusing Mysliwiec of sexual harassment. Defendant makes no mention of the alleged telephone call between Plaintiff, Mysliwiec, Sample, and Daly, or Plaintiff's alleged letter to Epp.

Defendant now moves for summary judgment, contending that Plaintiff has not adduced sufficient evidence to make out a *prima facie* case of retaliation under Title VII. (Def.'s Mot. Summ. J., ECF No. 23).

II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) directs district courts to grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." If the moving party carries this burden, then summary judgment will be denied only if the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing particular parts of

materials in the record constituting admissible evidence. Fed. R. Civ. P. 56(c)(1)(A). The court will then assess the merits of the motion, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III. ANALYSIS

To establish a *prima facie* case of retaliation under Title VII, a Plaintiff must prove three things: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that her protected activity caused the employer to take the adverse action. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Defendant argues that Plaintiff cannot prove any of these three elements, and that it is therefore entitled to summary judgment. The Court finds, however, that the record plainly reveals disputes of material fact with regard to the circumstances under which Plaintiff left her employment, as well as the role that her allegations of sexual harassment played in her leaving. Defendant has submitted the deposition testimony of a witness, Ms. Hixon, who claims that Plaintiff told her she "quit" shortly before leaving work on February 7, 2006.[1] (Hixon Dep. 17-18, 26-27, ECF No. 23-15, Ex. O). Plaintiff, however, has testified that she never made any such statement and that she continued to follow Defendant's procedures for calling in sick to work the following day, showing that she had no intention of quitting. (Emond Dep. 138, ECF No. 26-2, Ex. A). Thus, whether Plaintiff quit or was fired, and hence whether she can prove an adverse employment action, is an issue that can only be determined by the fact-finder at trial. Similarly, if Plaintiff does prove that she was fired, then the fact that the firing took place only a few days after she first complained of Mysliwiec's alleged sexual harassment creates a question of fact as to whether the complaint caused the firing. *See Booth v. Maryland*, 337 Fed. App'x. 301, 310 (4th Cir. 2009)

---

[1] Notably, however, Hixon herself did not interpret Plaintiff's statement as resignation from her job. (Hixon Dep. 27).

7

(citing *Mitchell v. Secretary Veterans Affairs*, 467 F.Supp.2d 544, 554 (D.S.C. 2006)) (stating that, to prove a causal connection based solely on temporal proximity, the two events must be "very close" in time).

The dispositive question for purposes of summary judgment, therefore, is whether Plaintiff has adduced enough evidence for a reasonable fact-finder to conclude that she engaged in a protected activity. Importantly, Plaintiff does not have to prove that her underlying claim of sexual harassment is meritorious, but only that she had "an objectively reasonable belief that she was complaining of conduct that constituted a Title VII violation." *Jordan v. Alternative Resources Corp.* 458 F.3d 332, 340 (4th Cir. 2006). The Court finds that Plaintiff has met this minimum threshold.

Plaintiff alleges that she engaged in a protected activity on February 2, 2006, when she wrote a letter to Mysliwiec, Epp, and Price, claiming that Mysliwiec had sexually harassed her and then disciplined her when she would not accept Mysliwiec's advances. That letter reads, in pertinent part:

> It is obvious to me that you have a personal agenda for singling me out. I find it particularly troubling that these dual warnings – my first as a CMS employee – happened 3 days after you approached me from behind while I was at my computer and grabbed my hand and I immediately asked you to not touch me, that such touching was inappropriate particularly from a supervisor. This is after you have made many comments about my personal appearance since you first arrived in this facility. I feel that I am being sexually harassed and personally harassed by you, and these attempts to write me up are punishment for me spurning your advances. There is no other logical explanation for your actions. Your behavior toward me has made me uncomfortable and has created a hostile workplace, in violation of federal law. You are violating my civil rights, and I want you to cease this harassment immediately.

(Pl.'s 2/2/06 Letter, ECF No. 26-5, Ex. D). The letter clearly constitutes *opposition activity* under Title VII. *See Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as well as staging

informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."). The only remaining question is whether Plaintiff held an objectively reasonable belief that the conduct she complained of amounted to a hostile work environment based on her sex.

To prove a hostile work environment based on sex, a Plaintiff must show that she was subjected to ongoing offensive conduct that was: (1) unwelcome; (2) based on the employee's sex; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment, and (4) imputable to the employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008). Defendant has raised no argument as to the first, second, or fourth factors, and the Court will therefore assume for purposes of this motion that Plaintiff has met those criteria. *See* Fed. R. Civ. P. 56(e)(2). Defendant argues, however, that the conduct Plaintiff alleges is not sufficiently severe or pervasive to constitute a hostile work environment. (Def.'s Mem. 16).

To establish that a defendant's conduct was sufficiently "severe or pervasive," a plaintiff must prove both that she subjectively found it to be so, and that an objectively reasonable person in her position would feel the same. *Ocheltree v. Scollon Productions, Inc.*, 355 F.3d 325, 333 (4th Cir. 2003) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)). In evaluating the objective reasonableness prong, courts in this circuit apply the five-factor test outlined in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) to the facts alleged by the plaintiff, considered in their totality. *See Conner v. Chrader-Bridgeport Intern., Inc.*, 227 F.3d 179, 193 (4th Cir. 2000). That test considers: (1) the frequency of the alleged discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) any alleged psychological harm the plaintiff may have suffered. *Id* (internal citations omitted). No single factor is dispositive, and courts must avoid "disaggregating" the facts of the alleged conduct. *Id*.

Plaintiff alleges that her complaint was based on the following conduct by Mysliwiec:[2]

> Ms. Mysliwiec engaged in public displays of affection with CMS staff members in the presence of Ms. Emond, including kissing hugging Ms. Sample.
>
> On January 27, 2006, Ms. Mysliwiec "snuck into" Ms. Emond's office unannounced. While Ms. Emond was sitting at her computer with her back to the door, Ms. Mysliwiec reached over Ms. Emond's body and grabbed Ms. Emond's hand.
>
> Ms. Mysliwiec frequently commented about Ms. Emond's physical appearance.
>
> Ms. Mysliwiec expressed preference as to the way Ms. Emond dressed (she preferred Ms. Emond wear skirts), as well as the manner in which she styled her hair.
>
> According to Ms. Emond, Ms Mysliwiec "would stare at me incessantly. She would comment (favorably) about my appearance at least daily."
>
> Ms. Mysliwiec interrogated Ms. Emond about her personal life, asking questions such as "does your fiancé love you?" or "are you happy with your relationship?"
>
> Ms. Mysliwiec routinely invaded Ms. Emond's personal space by entering Plaintiff's office unannounced and staring at Plaintiff from behind until Ms. Emond noticed her intruder. In fact, this conduct occurred to frequently Ms. Emond described it as "stalking."

(Pl.'s Resp. Opp. Summ. J. 9, ECF No. 26) (citing Emond Dep. 62, 65-66, 96-97, ECF No. 26-2; Pl.'s Letter To S. Powers, ECF No. 26-3; Pl.'s 2/2/06 Letter, ECF No. 26-5).

First, in view of Plaintiff's statement in her letter (ECF No. 26-5) that Mysliwiec's conduct violated "federal law" and her "civil rights," and "created a hostile workplace," there can be little doubt that a reasonable jury could conclude that Plaintiff held a subjective belief that she was complaining about conduct that violated Title VII. Second, the Court finds that a reasonable jury could conclude that Plaintiff's subjective belief was objectively reasonable. The specific conduct that Plaintiff alleges is somewhat ambiguous. For example, if considered in a vacuum, it is not necessarily improper for coworkers to complement one another on their appearances or to inquire about each other's relationships, perhaps even frequently. Under certain circumstances, public

---

[2] Plaintiff claims that the complaint was not limited to these incidents, but in a motion for summary judgment the opposing party is obliged to support its arguments with evidence from the record. Fed. R. Civ. P. 56(c)(1)(A). The Court will therefore consider only the evidence that Plaintiff actually cites in her opposition brief.

displays of affection might be quite innocuous. However, in other contexts, these acts can take on a more sinister meaning. Assuming, as it must in considering summary judgment, that Plaintiff's version of events is true, the Court is mildly troubled by the idea of a supervisor "routinely" entering an employee's office, uninvited and unannounced, and staring at the employee in silence until her presence is noticed. Adding a physically intimate gesture such as grabbing the employee's hand could lead a reasonable employee to view this conduct as an expression of sexual interest. And, with this sort of intrusive, sexually tinged behavior as a backdrop, Plaintiff's other allegations, which might otherwise appear benign, could be taken by a reasonable employee as harassment. Defendant is certainly correct in its observation that none of Mysliwiec's alleged conduct, even taken in its totality, could be called severe. However, given Plaintiff's allegation that Mysliwiec engaged in at least one of these behaviors daily, a reasonable person could conclude that the harassment was pervasive enough to change the conditions of Plaintiff's employment and interfere with her work performance.

The Court also finds that two additional factors weigh in Plaintiff's favor. One is the disparity of power between the parties. The Fourth Circuit has held that a reasonable jury may find harassing behavior by a direct supervisor, who "ha[s] significant authority over [the employee] on a day-to-day basis and the ability to influence the rest of [the employee's] career" to be objectively more severe than the same behavior by a "fellow employee." *EEOC v. Fairbrook Medical Clinic*, 609 F.3d 320, 329 (4th Cir. 2010). Based on both parties' descriptions of the work environment at ECI, it appears that Mysliwiec was not only Plaintiff's direct supervisor, but may have been the highest authority actually working at the facility. A jury that so found might reasonably conclude that Plaintiff's being "alone" with Mysliwiec in this manner on a daily basis, with no immediate supervision by higher authority, increased the objective severity of Mysliwiec's alleged conduct.

Second, and finally, the Fourth Circuit has recognized that "the line between a merely unpleasant working environment and a hostile or deeply repugnant one is sometimes difficult to locate." *Moser v. MCC Outdoor, LLC*, 256 F.App'x. 634, 640 (4th Cir. 2007) (unpublished) (quotation marks omitted). In at least one case, when that line proved exceptionally elusive, the Fourth Circuit eschewed summary judgment, holding that "While this case demonstrates just how difficult placing that line can be, we nonetheless conclude that the district court erred in granting summary judgment." *See id*. The present case is yet another example in which the line has been obscured by the ambiguity of the facts Plaintiff has alleged. In these circumstances, the Court thinks that resolving the ambiguity and revealing on what side of the line Plaintiff's case ultimately falls is properly the charge of a jury.

Defendant cites several cases involving conduct it argues is worse than that alleged by Plaintiff, in which the Fourth Circuit found the alleged conduct was not "severe or pervasive." Having reviewed these cases, however, the Court finds them to be distinguishable. First, Defendant cites *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir. 1996), in which, as characterized by Defendant in its brief, a male employee alleged that his male supervisor "bumped into him, positioned a magnifying glass over his crotch, stared at him in the bathroom, asked whether he had sex with anyone, referred to genitalia, and attempted to kiss him. (Def.'s Mem. 14, ECF No. 32-1) (internal quotation marks omitted). While these allegations, on their face, do appear to be worse than what Plaintiff claims here, the Fourth Circuit's summary of the allegations in *Hopkins* made clear that the defendant's conduct had been by way of jesting and horseplay, a characterization not easily applied to Plaintiff's allegations in this case. The Court in *Hopkins* also described defendant's behavior as "temporally diffuse," whereas Plaintiff here claims that some sort of harassment occurred at least daily.

12

Second, Defendant cites a case from this court, *Raley v. Board of St. Mary's County Comm'rs.*, 752 F. Supp. 1272 (D. Md. 1990), in which it indicates that the plaintiff was subjected to "various offensive touchings and other sexual innuendos, including an occasion where the supervisor uninvitedly placed his hands on [the plaintiff's] thigh underneath her dress." (Def.'s Mem. 15) (citing *Id* at 1275, 1280) (internal quotation marks omitted). The Court in that case too, however, found that the alleged conduct consisted of only a few isolated incidents over an eight month period, and in fact distinguished that scenario from another case, *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), in which the alleged conduct occurred "repeatedly" over a two month period, which is what Plaintiff alleges in this case. *Raley v. Board*, 752 F.Supp. at 1280.

Third,[3] Defendant cites *Shaver v. Dixie Trucking Co., Inc.*, 181 F.3d (Table) 90 (4th Cir. 1999 (unpublished), which it describes as "finding that placing a hand on the plaintiff's knee, rubbing the plaintiff's back, and two hugs initiated by the alleged harasser did not constitute a hostile working environment where, at the time of the touching, the alleged harasser did not make any sexually suggestive remarks or touch or attempt to touch plaintiff in any other manner." (Def.'s Mem. 15-16). In that case, however, the Fourth Circuit specified that it considered the "principal basis" of the complaint to be "two hugging incidents" which occurred "approximately two to three weeks apart and which did not "[last] longer than five to ten seconds." *Id* at 1. This conduct clearly was not as pervasive as that alleged by Plaintiff in this case. Furthermore, the Court simply does not find that two five-to-ten-second hugs, no matter how unpleasant, have the same invasive quality as the totality of Mysliwiec's alleged routine of standing silently in Plaintiff's office (and on one occasion grabbing her hand) and her alleged regular comments about Plaintiff's appearance, particularly when considered in the light most favorable to Plaintiff.

---

[3] Plaintiff's next citation is actually *Murray v. City of Winston-Salem*, 203 F.Supp. 2d 493 (M.D.N.C. 2002). The Court does not evaluate this case, however, because it is not binding authority in this jurisdiction.

Fourth, Defendant cites *Pesso v. Montgomery General Hospital*, 1999 WL 326090 (4th Cir. 1999) (unpublished), "affirming summary judgment and finding that statements such as asking if [the plaintiff] wants to get a room at a medical conference and wondering aloud what [the plaintiff] would 'taste like' - were neither severe nor pervasive." (Def.'s Mem. 16) (internal quotation marks omitted). In this case too, however, the Court found that the complaint was based primarily on two comments made several months apart.

Finally, Defendant cites *Vaughn-Walker v. Brown*, 1998 WL 609722 (4th Cir. 1998) (unpublished), "finding that extensive unsolicited statements on the plaintiff's 'sexy appearance and her legs' was not sexual harassment." (Def.'s Mem. 16). In that case, the plaintiff's claim was actually based on a single incident, in which she alleged that defendant "popped" her on the buttocks with a "patient sign-out book." 1998 WL 609722 at 1. The "extensive" statements that Defendant refers to were made on a single occasion, a few days before this incident. *Id*. This conduct is clearly not as pervasive as what Plaintiff alleges here.

In conclusion, the Court finds that Defendant has not carried its burden of showing the absence of a dispute of material fact. Plaintiff has adduced enough evidence, albeit barely, to create a factual dispute as to whether she was fired in retaliation for complaining about Mysliwiec's alleged sexual harassment. She has shown, first, that she engaged in a protected activity by complaining about conduct that she had a reasonable belief constituted a violation of Title VII. Second, she has raised a factual dispute as to whether she suffered a negative employment action. And, finally, the proximity between the alleged protected activity and the alleged employment action is sufficient to create a genuine factual dispute as to the element of causation. Plaintiff's evidence is thin. However, in determining whether to award summary judgment to Defendant, the Court is constrained to view the record in the light most favorable to Plaintiff and to draw every

14

reasonable inference in her favor.  In that light only, the Court finds that Plaintiff has produced the minimum necessary to take her case to a jury.

**IV. CONCLUSION**

Accordingly, an order shall enter DENYING Defendant's Motion for Summary Judgment (ECF No. 23).

Dated this 12th day of June, 2011

BY THE COURT:

/s/

James K. Bredar
United States District Judge